**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | | |
|---|---|---|
| ASHLIE MUNCEY and JONATHAN TUCKER, as Surviving Parents of Loyce Tucker, and ASHLIE MUNCEY, as Administrator of the Estate of Loyce Luther Tucker, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS LEE HICKS, Jr., JIMMY MOORE, and THE GEORGIA DEPARTMENT OF JUVENILE JUSTICE,<br><br>Defendants. | ) | CIVIL ACTION<br>FILE NO. 5:23-cv-00078-LGW-BWC |

**BRIEF IN SUPPORT OF DEFENDANTS GEORGIA DEPARTMENT OF JUVENILE JUSTICE AND JIMMY MOORE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant Georgia Department of Juvenile Justice ("DJJ") and Jimmy Moore, through counsel, submit this brief in support of their motion to dismiss Plaintiffs' amended complaint. (Doc 8).

**INTRODUCTION AND FACTUAL ALLEGATIONS**

This is a removal action under 28 U.S.C. § 1441. Plaintiffs filed the original complaint in the State Court of Ware County on June 21, 2023. (Doc. 1-1 at 2-14). Defendants DJJ and Jimmy Moore filed an answer in state court (Doc. 1-3 at 1-17) and removed to this Court on August 14, 2023. (Doc. 1). After removal, Plaintiffs filed an amended complaint. (Doc. 8).

This lawsuit arises from the death of Loyce Tucker, who was an inmate at the Waycross Regional Youth Detention Center ("Waycross RYDC") in Waycross, Georgia. (Doc. 8 at ¶¶ 1-3, 18). Plaintiffs Ashlie Muncey and Jonathan Tucker are Loyce Tucker's surviving parents. (*Id.* at

¶ 4). In the amended complaint, Plaintiffs allege that on the morning of August 9, 2022, Loyce Tucker was involved in a "fight game" with at least one other inmate at Waycross RYDC. (*Id.* at ¶ 21). Plaintiffs allege that Defendant Thomas Hicks, a corrections officer, organized or encouraged the "fight game," during which Loyce Tucker was forcefully struck by another inmate. (*Id*. at ¶¶ 22-23). After being struck, Loyce Tucker lost consciousness and collapsed. (*Id.* at ¶ 24). According to Plaintiffs, Defendant Hicks did not call 911 or attempt to obtain medical care, but instead, he dragged Loyce Tucker into the shower. (*Id*. at ¶¶ 26-27). Eventually, another officer called 911, and Loyce Tucker was transported to a local hospital and later airlifted to a hospital in Savannah, Georgia. (*Id.* at ¶ 28). On August 11, 2022, Loyce Tucker died from a vertebral artery dissection, which occurred as a result of being struck in the fight with the other inmate. (*Id.* at ¶¶ 30-33).

At that time, Defendant Moore was the director of Waycross RYDC. (*Id.* at ¶ 20). Plaintiffs allege that Defendant Moore "was aware these fight games were regularly taking place, but failed to stop this practice." (*Id.* at ¶ 36).

On these allegations, Plaintiffs bring claims against Defendants Moore and Hicks under 42 U.S.C. § 1983 and the Eighth Amendment for deliberate indifference to Loyce Tucker's safety. (*Id.* at ¶¶ 38-46). Plaintiffs also bring a claim against Defendant Hicks for deliberate indifference to Loyce Tucker's medical needs. (*Id.* at ¶¶ 48-55). Finally, Plaintiffs bring a state law tort claim alleging that Defendant DJJ is vicariously liable for the actions of Defendant Hicks, whose actions they say led to the death of Loyce Tucker. (*Id.* at ¶¶ 57-61).

As shown below, Plaintiffs fail to state an Eighth Amendment claim against Defendant Moore and he is entitled to qualified immunity. Plaintiffs' state law tort claim against Defendant DJJ is barred by sovereign immunity and the Georgia Tort Claims Act.

## ARGUMENT AND CITATION OF AUTHORITY

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim for relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663. "[U]nwarranted deductions of fact in a complaint are not admitted as true for purposes of testing the sufficiency of plaintiff's allegations." *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotations omitted). Conclusory allegations and legal conclusions also are not accepted as true. *Iqbal*, 556 U.S. at 678; *Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010); *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A court is to make reasonable inferences in the plaintiff's favor, but it is not required to draw a plaintiff's inferences. *Sinaltrainal*, 578 F.3d at 1260; *Amer. Dental Assoc.*, 605 F.3d at 1290. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; *see also Sinaltrainal*, 578 F.3d at 1260 ("[t]he mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss").[1]

---

[1] Defendants acknowledge that the initial complaint was filed in state court where the pleading requirements are arguably more lenient. Once a matter is removed to federal court, however, it is controlled by the Federal Rules of Civil Procedure. *See Gates v. U.S. Airways Group, Inc.*, 2007 WL 3117729, *1 (M.D. Fla. 2007); *Rentz v. Swift Transp. Co., Inc.*, 185 F.R.D. 693, 696 (M.D. Ga. 1998). Moreover, since removal, Plaintiffs have filed an amended complaint in federal court and that amended complaint is fully subject to the federal rules.

**A. Plaintiffs fail to state an Eighth Amendment claim against Defendant Moore and he is entitled to qualified immunity.**

**1. Plaintiffs fail to allege a supervisory liability claim against Defendant Moore for violation of Loyce Tucker's Eighth Amendment rights.**

Section 1983 provides a cause of action for damages against every person who, acting under color of state law, deprives another of "rights, privileges, or immunities, secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights," and instead provides a "method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). When a court considers a Section 1983 claim, it must first identify the specific right allegedly infringed, and then determine the validity of the claim "by reference to the specific constitutional standard which governs that right." *Albright*, 510 U.S. at 271; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

In the context of a failure to protect claim, the Supreme Court has said that an "official's 'deliberate indifference' to a substantial risk of serious harm . . . violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). To violate the Eighth Amendment, an official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 823. The required culpability—deliberate indifference—occurs only when the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Because the official's responsibility is to take "reasonable measures" to protect an inmate, *id.* at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)), the Eighth Amendment is not violated so long as the official responds reasonably to the known risk "even if

the harm ultimately was not averted." *Id.* at 844; *accord Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*) ("An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.'") (quoting *Farmer*). Causation is an essential element of the claim. *Carter*, 352 F.3d at 1349.

Thus, to make out an Eighth Amendment claim based on deliberate indifference to a prisoner's safety, the plaintiff must allege and ultimately prove: (1) a substantial risk of serious harm; (2) the facility official was subjectively aware of that risk; (3) the official disregarded the known risk by not responding reasonably to it; and (4) causation. *Farmer*, 511 U.S. at 832, 837; *Marsh*, 268 F.3d at 1028; *Carter*, 352 F.3d at 1349. To meet this standard "there must be more than a mere possibility of serious harm; instead, there must be a strong likelihood." *Turner v. Burnside*, 2011 U.S. App. LEXIS 21488, **5 (11th Cir. Oct. 24, 2011).

Section 1983 claims cannot be based upon *respondeat superior* or vicarious liability. *See Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Without some degree of personal participation in the alleged deprivation of the plaintiff's rights by the defendant, no liability exists. *See id.* To state a claim against a supervisory official, a plaintiff must allege that the supervisor personally participated in the alleged unconstitutional conduct or that there is a "causal connection" between the actions of the supervisor and the alleged constitutional deprivation. *See Simpson v. Stewart*, 386 Fed. Appx. 859, 860 (11th Cir. 2010). A causal connection may be shown by establishing that the supervisor (1) was on notice of a "history of widespread abuse" of constitutional rights but failed to take corrective action; (2) established or put in place a policy that resulted in the alleged constitutional deprivation; or (3) directed subordinates to act unlawfully or knew that

subordinates would act unlawfully and failed to stop them from doing so. *See Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "The standard by which a supervisor is held liable … for the actions of a subordinate is extremely rigorous." *Doe v. School Bd. of Broward County, Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010).

Here, Plaintiffs do not allege that Defendant Moore was directly involved in the incident leading to Loyce Tucker's death. Furthermore, Plaintiffs do not allege that Defendant Moore established a policy that led to the alleged deprivation, nor do they allege that Defendant Moore directed subordinates to act unlawfully, or that Defendant Moore knew that there would be a "fight game" at Waycross RYDC on August 9, 2022, and failed to stop it. Therefore, Plaintiffs' claim against Defendant Moore must travel under theory (1) of supervisory liability. Plaintiffs must allege facts showing that Defendant Moore was on notice of a history of widespread abuse, which they wholly fail to do.

The law is clear that, to support a claim of supervisor liability on a theory of widespread abuse, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *See Simpson*, 386 Fed. Appx. at 860 (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). This is an exacting standard that requires allegation, and ultimately proof, of a "constant threat." *Purcell v. Toombs County, Ga.*, 400 F.3d 1313, 1320-1321 (11th Cir. 2005). For example, *Purcell* involved evidence of at least three identified incidents of inmate-on-inmate violence, *see id.* at 1318, which was the specific risk of harm alleged in that case, and still the Eleventh Circuit said the evidence did not show that inmates were "exposed to something even approaching the 'constant threat of violence.'" *Id.* at 1321.

In this case, Plaintiffs make the conclusory allegation that Defendant Moore was aware that fight games were taking place at Waycross RYDC and failed to stop them. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiffs fail to specifically identify a series of incidents at Waycross RYDC prior to August 9, 2022 (which is required here to state a widespread abuse claim) that would have put Defendant Moore on notice of a pattern of abuse that was obvious, flagrant, rampant, and of continued duration. Accordingly, Plaintiffs fail to state a supervisory liability claim against Defendant Moore and the Eighth Amendment claim against him should be dismissed.

**2. Defendant Moore is entitled to qualified immunity.**

Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The immunity protects from suit "all but the plainly incompetent or those who knowingly violate federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). The relevant question to be answered is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

To be entitled to qualified immunity, an official must first show that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Vinyard*, 311 F.3d at 1346. "A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his

authority." *Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1144 (11th Cir. 2017). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* "In other words, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* The focus is ultimately on "whether the acts in question . . . are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, Plaintiffs allege that Defendant Moore was acting pursuant to his duties and within his authority as a prison official.

The burden thus shifts to Plaintiffs to show that qualified immunity is not appropriate. *Vinyard*, 311 F.3d at 1346. To carry that burden, Plaintiffs must show that the constitutional right asserted was clearly established at the time the alleged violation occurred. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). The "salient question" is whether the state of the law at the time of the incident gave the defendant "fair and clear warning" that his conduct with respect to the plaintiff was unconstitutional. *Id.* at 746. Liability only attaches if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). To make this showing, a plaintiff must identify either (1) earlier case law from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court that is materially similar to the instant case, and thus, provided clear notice of the asserted constitutional right; or (2) general rules of law that apply with obvious clarity to the circumstances, clearly establishing the unlawfulness of the defendant's conduct. *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007).

Obvious clarity cases are "rare" and constitute "a narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation." *Coffin v. Brandau*, 642 F.3d 999, 1014-1015 (11th Cir. 2011); *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011). This is because "[a] reasonable official's awareness of the existence of an abstract right . . . does not equate to knowledge that his conduct infringes the right." *Coffin*, 642 F.3d at 1015. And "public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Id.* "Thus, if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotations omitted).

Plaintiffs have not alleged a violation of clearly established law. The law is clear that to make out a supervisory liability claim on a theory of widespread abuse, a plaintiff must specifically plead supporting facts that show a history of constitutional violations, like the one complained of, that are obvious, flagrant, rampant, and of continued duration. Plaintiffs' allegations against Defendant Moore are conclusory and fail to meet this stringent standard. Accordingly, Defendant Moore is entitled to qualified immunity.

**B. Plaintiffs' claims against Defendant DJJ are barred by sovereign immunity and the GTCA.**

Any tort claims brought against a state government entity are subject to the terms of the Georgia Tort Claims Act ("GTCA"). Plaintiffs specifically invoke the GTCA in the Complaint, but their tort claims are barred by the GTCA's terms and conditions. Specifically, the GTCA's "assault and battery" exception bars the Plaintiffs' claims because the Plaintiffs' claimed loss(es), including the death of their son, arise out of a battery. This issue is discussed in turn below, but first, it is helpful to discuss sovereign immunity and the GTCA in more detail.

**1. Background to the GTCA and sovereign immunity.**

The Georgia Constitution expressly preserves the State's sovereign immunity and makes clear that such immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is waived and the extent of such waiver." Ga. Const. of 1983, Art. I, § II, ¶ IX(e). The General Assembly passed the GTCA in 1992. O.C.G.A. § 50-21-20, et seq. *See Datz v. Brinson*, 208 Ga. App. 455, 455-56 (1993). By its own terms, the GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee." O.C.G.A. § 50-21-25(a). In passing the GTCA, the General Assembly recognized the "inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." O.C.G.A. § 50-21-21(a). It also recognized that due to the unique nature of government, "[t]he exposure of the state treasury to tort liability must therefore be limited." O.C.G.A. § 50-21-21(a). Thus, the General Assembly declared as a matter of public policy that "the state shall only be liable in tort actions within the limitations of this article and in accordance with the fair and uniform principles established in this article." O.C.G.A. § 50-21-21(a). Georgia courts have repeatedly said that the GTCA must be strictly construed. *Ga. Ports Auth. v. Harris*, 274 Ga. 146, 150 (2) (2001); *see also*, *Dempsey v. Bd. of Regents of the Univ. Sys.*, 256 Ga. App. 291, 293 (2002).

In the State of Georgia, "sovereign immunity has constitutional status and cannot be abrogated by the judiciary." *Dollar v. Dalton Public Schools*, 233 Ga. App. 827, 830 (1998). Moreover, as held by the Georgia Supreme Court, "[a] waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace. [cit]." *Riddle v. Ashe*, 269 Ga. 65, 67 (1998), citing *Woodard v. Laurens County*, 265 Ga. 404, 406 (1995).

**a. Sovereign immunity is a threshold issue.**

Sovereign immunity is a threshold issue. *McConnell v. Dep't of Labor*, 302 Ga. 18, 18-19 (2017). Jurisdiction of a court to afford the relief sought, i.e. subject matter jurisdiction, is a matter that should be decided preliminarily. *See McConnell*, 302 Ga. at 19; *Rivera v. Washington*, 298 Ga. 770, 776-78 (2016).

The lack of subject matter jurisdiction is a matter in abatement, which does not test the merits of the claim. *Georgia Ports Authority v. Harris*, 243 Ga. App. 508 (2000). Questions of waiver of sovereign immunity are, therefore, appropriately considered in the context of a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b).

**b. Plaintiffs bear the burden of demonstrating waiver of sovereign immunity.**

Sovereign immunity is not an affirmative defense. The party seeking to benefit from the waiver of sovereign immunity, i.e., the Plaintiffs, bears the burden of proving the existence of a waiver of sovereign immunity for the claims presented by that party. *Sherin v. Department of Human Resources*, 229 Ga. App. 621, 625 (1997).

**2. The GTCA's assault and battery exception bars Plaintiffs' claims against Defendant DJJ.**

The General Assembly set forth thirteen different exceptions to the limited waiver of sovereign immunity contained in the GTCA. O.C.G.A. § 50-21-24. If a tort claim falls within the scope of any *one* of these thirteen exceptions, it is not actionable on grounds of sovereign immunity. *See Id*. Specifically, the GTCA says, in relevant part:

> The state shall have no liability for losses resulting from …
>
> **(7)** *Assault*, *battery*, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights;

O.C.G.A. § 50-21-24(8) (emphasis added). Georgia Courts have interpreted this exception to mean that there is no waiver of sovereign immunity where a loss results from assault or battery, even if a private individual would be liable under similar circumstances. *Pelham v. Bd. of Regents of the Univ. Sys. of Ga.*, 321 Ga. App. 791, 795 (2013). The plaintiff in *Pelham* filed suit against the Board of Regents of the University System of Georgia after he was injured in a fight ordered by a Georgia Southern University football coach. *Id.* at 792. The coach ordered players on the Georgia Southern football team to fight to show whether they were "tough enough" to remain on the team and earn a scholarship. *Id*. The court found that the plaintiff's suit was barred by the "assault and battery" exception and explained, "in determining whether the exception for assault and battery applies, the focus is not on the government action taken or the duty allegedly breached by the government, but on the act causing the underlying loss, and it is not necessary that such act have been committed by a state officer or employee." *Id*. at 794-95. Any losses arising out of conduct that would constitute the tort of assault or battery fall within the exception, regardless of what causes of action a plaintiff brings. *Id*. at 797. Because the fight with the other player, which constituted an assault and battery, caused the plaintiff's injuries, the exception applied, and sovereign immunity was not waived. *Id*. at 796.

Similarly, the Department of Corrections was not liable in a mother's wrongful death action after it placed her son in a cell with an inmate who was hearing voices and threatened to harm her son. *Southerland v. Ga. Dep't of Corr.*, 293 Ga. App. 56, 57 (2008). The other inmate beat the son to death, but because this action constituted a battery, the mother's lawsuit was barred by the "assault and battery" exception to the State's waiver of sovereign immunity. *Id.* at 59.

According to Plaintiffs' amended complaint, here, Loyce Tucker's death was caused by a fight with another inmate at Waycross RYDC, and so Plaintiffs cannot maintain their tort claims against Defendant DJJ. Even if the Plaintiffs' allegations that the Department knew of or condoned some sort of fight game among inmates at Waycross RYDC are true, which the Department denies, these facts would not be distinguishable from the facts in *Pelham* where a state-employed coach ordered the fight that gave rise to the plaintiff's claims in that case. While the outcome was more tragic here, Loyce Tucker's death, like the death of the plaintiff's son in *Southerland*, resulted from a battery, and so Plaintiffs cannot show that sovereign immunity has been waived. Consequently, their tort claims against Defendant DJJ should be dismissed.

## CONCLUSION

For the foregoing reasons, these Defendants respectfully request that this Court grant their motion and dismiss all claims against them.

Respectfully submitted,

CHRISTOPHER M. CARR 112505
Attorney General

LORETTA L. PINKSTON-POPE 580385
Deputy Attorney General

KATHLEEN S. TURNIPSEED 940900
Senior Assistant Attorney General

LAURA L. LONES 456778
Senior Assistant Attorney General

/s/ William W. Peters
WILLIAM W. PETERS 515342
Assistant Attorney General

/s/ William Tomlin
WILLIAM L. TOMLIN 223213
Assistant Attorney General

*Attorneys for Defendants Georgia Department of Juvenile Justice and Jimmy Moore*

PLEASE ADDRESS ALL COMMUNICATIONS TO:
William W. Peters
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, GA 30334-1300
Telephone: (404) 458-4338
Facsimile: (404) 651-5304
wpeters@law.ga.gov

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day served the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This 29th day of August, 2023.

/s/ William W. Peters
WILLIAM W. PETERS 515342
Assistant Attorney General