**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | | |
|---|---|---|
| ASHLIE MUNCEY and JONATHAN TUCKER, as surviving parents of Loyce Tucker, and ASHLIE MUNCEY, as Administrator of the Estate of Loyce Luther Tucker, deceased, | § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 5:23-cv-00078-LGW-BWC |
| THOMAS LEE HICKS, JR., JIMMY MOORE, and THE GEORGIA DEPARTMENT OF JUVENILE JUSTICE, | § § § § § | |
| *Defendants*. | § | |

**DEFENDANT HICKS'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

COMES NOW, Defendant Thomas Hicks's Motion to Dismiss Plaintiffs' Amended Complaint and Brief in Support, showing the Court as follows:

This is a removal case. Plaintiffs filed suit in state court on June 21, 2023. The case was removed to this Court on August 14. Three days later, Plaintiffs filed their Amended Complaint.

Plaintiffs assert two claims against Hicks: (I) deliberate indifference to harm in violation of the Eighth Amendment via 42 U.S.C. § 1983, and (II) deliberate indifference to serious medical need in violation of the Eighth Amendment via 42

U.S.C. § 1983. Plaintiffs fail to state a claim for Count II, as the allegations neither set forth a plausible claim nor do they overcome Hicks's qualified immunity.

## **ALLEGATIONS FROM THE AMENDED COMPLAINT**[1]

Plaintiffs allege that Loyce Tucker, while in detention at the Waycross Regional Youth Detention Center (RYDC) died after a fight with another juvenile. (Doc. 8 at 3-4). Plaintiffs allege that Hicks arranged or encouraged the fight between the two. (*Id.*). Tucker was allegedly hit in the neck area and knocked unconscious. (*Id.*). He did not stop breathing. Plaintiffs allege that Hicks took Tucker to a nearby shower. (*Id.*). This was an attempt to wake Tucker up. Plaintiffs allege that after "at least 10 minutes," a medical emergency was called, and Tucker was transported to a local hospital. (*Id.*). Tragically, Tucker died a few days later.

## **ARGUMENT AND CITATION OF AUTHORITY**

Plaintiffs' claim for deliberate indifference to a serious medical need does not state a claim against Hicks. The standard in the Eleventh Circuit, as recently affirmed in *Wade v. McDade et al.*, is "more than gross negligence" or, stated differently, criminal recklessness. 67 F.4th 1363 (11th Cir. 2023). The allegations in Count II do not state a viable claim under this standard.

---

[11] These are the allegations made in the Amended Complaint. (Doc. 8). Defendant does not accept or admit to this version of events nor waive any future objections.

A deliberate indifference claim has an objective and subjective element. Objectively, the plaintiff must establish a "serious medical need." *Id.* "To make out the subjective component of an Eighth Amendment deliberate-indifference claim, a plaintiff must establish that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with **more than *gross* negligence**." *Id.* at 1374 (emphasis in original). It is the third prong— the *mens rea* issue— that has proved endlessly problematic for the Eleventh Circuit over the last 25 years. The *Wade* court recounted a decades-long saga involving Supreme Court precedent followed by a see-saw-like approach to the legal standard employed by the Eleventh Circuit. *Id.* at 1371-74. The court describes the morass created by the court's "flip-flop between two competing formulations: 'more than *mere* negligence' and 'more than *gross* negligence,'" as "hopelessly confused" and "what we'll charitably call a 'mess.'" *Id.* at 1371 (emphasis in original). It was against this backdrop that the *Wade* court found itself and sought to clarify the standard based on binding Circuit precedent.

In the seminal Supreme Court Eighth Amendment deliberate indifference case, *Estelle v. Gamble*, the Court found the Cruel and Unusual Punishments Clause prohibited "deliberate indifference to the medical needs of prisoners." *Id.* at 1370 (citing, *Estelle*, 429 U.S. 97, 104-05 (1976)). Almost twenty years later, the Supreme Court held that deliberate indifference "is satisfied by something less than acts or

omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 829 (1994). The Court went on to explain the standard as "subjective recklessness as used in the criminal law." *Id.* at 839. Following *Farmer*, the Eleventh Circuit struggled to find a workable test, with different panels adopting one of the two *mens rea* standards. This set the stage for endless confusion. Not only for the Circuit but for those who rely on the Court to establish clear, workable constitutional standards: government officials.

Qualified immunity provides immunity from suit not just immunity from liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To receive qualified immunity, a public official must first show that he was acting "within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005).

An officer is within his discretionary authority if the acts in question fall under the employee's job responsibilities. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). The question is not whether the alleged violation of constitutional rights is a legitimate job-related function or within the scope of a government official's authority or power. *Id.* at 1266. In other words, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." *Id.* Instead, the court

should "look to the general nature of the defendant′s action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.*

Hicks was a corrections officer. His duties included overseeing those in the custody of the detention center. This included supervising inmates, directing inmates to areas or facilities within the detention center, and ensuring that inmates comply with directions. Thus, the general nature of Hicks's alleged actions—supervising and giving directives— fell within his job responsibilities.

If the defendant was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Lee v. Farraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To meet that burden, a plaintiff must show both (1) that he suffered a violation of a constitutional right and (2) that the right he claims was clearly established at the time of the alleged misconduct." *Capt. Jack's Crab Shack, Inc. v. Cooke*, 2022 U.S. App. LEXIS 26523, at *26-27 (11th Cir. 2022). In assessing whether the law is clearly established, courts look to the law as it was interpreted at the time of the challenged conduct by the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court. *Id.*

Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wade* at 1370.

The analysis employed by the *Wade* court to affirm the grant of summary judgment to the non-supervisory defendants is illustrative. The defendants in *Wade* included a lieutenant, a sergeant, and two nurses. The plaintiff alleged that failing to provide him with his medication for several days led to a seizure that caused permanent brain damage.

The sergeant made notations on the medication administration record (MAR) on the first and fourth nights that the plaintiff missed his medication. *Id.* at 1374. There were inconsistencies over whether the sergeant was trained to communicate medication-administration problems through MAR notations or whether he should have told a nurse of the missing medication. *Id.* There was also a dispute between the sergeant and a nurse as to whether he notified the nurse of the medication issue. *Id.* The *Wade* court found that the sergeant disregarded his training and had subjective awareness that failing to provide the plaintiff with his medication posed a serious health risk. *Id.* The court wrote that "more than gross negligence" is the "equivalent of recklessly disregarding a substantial risk of serious harm to the inmate." *Id.* at 1375. And under the "more than gross negligence" analysis, the sergeant's acts or omissions "[did not] satisfy that high standard." *Id.*

Like the sergeant in *Wade*, the allegations made against Hicks do not rise to the level of "more than gross negligence." For example, Plaintiffs allege that after Tucker was unconscious, Hicks took steps to revive him by bringing him to the shower. (Doc. 8 ¶ 27). Hicks, by attempting to wake Tucker up using a shower, was not acting in a criminally reckless manner. Tucker was breathing and Hicks could not have known how serious the injury was in the seconds and minutes following the loss of consciousness. Within ten minutes, Plaintiffs allege that another officer with Hicks called a medical emergency when Tucker was not responding. So, while it may be argued that Hicks was negligent in not calling a medical emergency as soon as Tucker was knocked unconscious, it certainly was not "more than gross negligence" or the equivalent of criminal recklessness.

The facts surrounding the nurses in *Wade*, and the Eleventh Circuit's analysis of those facts, are also instructive. The nurses attended a pill call, inventoried the pill cart, noticed an "unusual post-it note" attached to the plaintiff's MAR, and failed to check the MARs to determine whether there were any medication administration problems from the prior night's pill call. *Wade* at 1375. The nurses knew the medication had been ordered from the pharmacy, but they also knew that there was a backup supply of the plaintiff's medication in a cabinet at the prison. *Id.* Similarly, the nurses could have obtained the medication

from a local pharmacy if the prison-system pharmacy was slow to provide the meds. *Id.*

The court recognized that the nurses were "more than *merely* negligent" and were even culpable for medical malpractice. But the court could not hold that the nurses' actions "constitute[ed] the sort of 'reckless disregard that we have held characterizes conduct that is more than grossly negligent." *Id.* at 1376.

Accepting the allegations made against Hicks as true, it cannot be said that he was "more than grossly negligent" in acting on Tucker's medical needs. Hicks took action to wake Tucker up using water, a common strategy for bringing someone around who has been rendered unconscious. More importantly, there is no allegation that Hicks abandoned Tucker during this period. It is not "more than grossly negligent" to take steps to wake up someone who was knocked unconscious in a fight and, when unsuccessful, ensure that another officer calls a medical emergency within 10 minutes. In this relatively short period, where Tucker was still breathing and appeared at first to have been only temporarily incapacitated, Hicks neither ignored a substantial risk of harm nor was criminally reckless.

It is useful to examine a case in which the Eleventh Circuit held that a prison official was liable for being "more than gross[ly] negligent." In *Bozeman v. Orum*,

422 F.3d 1265 (11th Cir. 2005), several guards beat an inmate to death or close to death. *Id.* at 1273. After beating and choking the inmate, the guards waited about twenty minutes before moving the inmate, who was not exhibiting signs of breathing or life. *Id.* The guards then moved the inmate to a new location and again waited more than 15 minutes before alerting medical staff, while the inmate was not breathing and turning blue. *Id.* By the time the guards obtained medical for the inmate, he had been dead for some time and was "cold to the touch." *Id.*

In *Bozeman*, it is easy to recognize the criminal recklessness. Not so here. While the general allegations may set forth negligence or even something "more than mere negligence," it is not the kind of criminal recklessness that would abrogate qualified immunity. And importantly, after the initial attempts to wake Tucker up were unsuccessful, medical assistance was called for. This is not "more than gross negligence."

Based on the allegations in Count II of the Amended Complaint, Hicks is entitled to qualified immunity for the allegation that he was deliberately indifferent to medical needs. Even if Hicks were not entitled to qualified immunity, Plaintiffs' allegations still fail to state a claim since the alleged conduct does not rise to the level

of "more than gross negligence" or criminal recklessness. For these reasons, Count II should be dismissed against Hicks.

Respectfully submitted this 31st day of August, 2023.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Hicks*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all counsel of record with a true and correct copy of Defendant Hicks's Motion to Dismiss and Brief in Support by filing the document with the Court's CM/ECF filing system which will automatically send notice of the filing to all attorneys of record.

This 31st day of August, 2023.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Hicks*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com